RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0431p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

VANGUARD FIRE & SUPPLY CO., INC., d/b/a
VANGUARD FIRE & SECURITY SYSTEMS,
              *Petitioner/Cross-Respondent,*

              *v.*

NATIONAL LABOR RELATIONS BOARD,
              *Respondent/Cross-Petitioner,*

ROAD SPRINKLER FITTERS LOCAL UNION NO. 669,
U.A., AFL-CIO,
              *Intervenor.*

Nos. 05-2497/2630

>

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board.
Nos. 7-CA-45823; 7-CA-46478; 7-CA-46727.

Argued: September 20, 2006

Decided and Filed: November 21, 2006

Before: BATCHELDER and MOORE, Circuit Judges; HOOD, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Timothy J. Ryan, RYAN & LYKINS, Grand Rapids, Michigan, for Petitioner. Stacy G. Zimmerman, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent. Jason J. Valtos, OSBORNE LAW OFFICES, Washington, D.C., for Intervenor. **ON BRIEF:** Timothy J. Ryan, RYAN & LYKINS, Grand Rapids, Michigan, for Petitioner. Stacy G. Zimmerman, Jill Griffin, Aileen A. Armstrong, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent. Jason J. Valtos, OSBORNE LAW OFFICES, Washington, D.C., for Intervenor.

_____

[*] The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

---

**OPINION**

---

HOOD, Chief District Judge.  This appeal involves a petition for review of a final Decision and Order of the National Labor Relations Board (the "Board" or "NLRB") and a cross-petition for enforcement of the Decision and Order.   Petitioner and Cross-Respondent, Vanguard Fire and Supply Company, Inc. ("Vanguard"), appeals the Decision and Order of the Board adopting the decision of Administrative Law Judge Keltner Locke ("ALJ Locke") that Vanguard violated the National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq. (the "Act"), by (i) withdrawing its recognition of Sprinkler Fitters Local Union No. 669 (the "Union") based  upon a disaffection petition signed by fewer than a majority of the employees in the collective-bargaining unit; (ii) unilaterally implementing changes to its cellular telephone bill reimbursement policy without notice to or bargaining with the Union; and (iii) refusing to bargain with the Union unless the Union complied with Vanguard's demand for a bargaining agenda.  Although the Board found additional unfair labor practices, those practices are not the subject of Vanguard's appeal.[1]

Vanguard appeals the Board's final Order, claiming there was not substantial evidence in the record to support the Board's decision that Vanguard violated the Act.  The Board cross-petitions this Court for summary enforcement of the unchallenged portions of the Decision and Order.

## I.   INTRODUCTION

### A.  Factual and Procedural Background

Vanguard "fabricates, installs, and maintains fire suppression and security products, including sprinkler systems, fire extinguishers, kitchen hoods, and alarm systems."  Vanguard has four facilities in Michigan that install fire security systems throughout the state.  Vanguard installs two types of systems: (1) sprinkler systems that spray liquid (i.e. water) onto the area below; and (2) "special hazard" or chemical systems that spray a gas or powder onto an area that may be harmed by water (i.e. computer room or paper storage areas).

In March or April of 2001, Vanguard's installers began organizing a union.  Following a Board-conducted election in July of 2001, where the Union won 9-3, the Union was certified as the representative of employees who were "engaged in the installation and service of fire protection sprinkler pipe and chemical system pipe."  The certification did not include other employees.

Following unsuccessful contract negotiations, the Union filed unfair labor practice charges with the Board which  included allegations that the company unlawfully subcontracted for bargaining work. Pursuant to a settlement agreement entered into on June 5, 2002, the parties agreed that the modified description of the bargaining unit work would include "installation and repair of fire sprinkler systems without geographic limitation, and restaurant systems."  The bargaining unit work, thus, did not include "installation and repair of other chemical or gas special hazard systems" or  the testing or inspection of the systems. These charges are not part of the Order under review by this Court, but the modifications made to the scope of the bargaining unit were effective at the time of the company's withdrawal of recognition. Negotiations for an initial contract continued with the above-mentioned changes to the bargaining unit.

---

[1] Vanguard did not challenge the Board's findings that Vanguard violated its collective bargaining duties by granting higher starting hourly wages, higher salary increases, and higher vacation accrual rates to certain employees.

In early 2003, the Union filed the charges at issue in the instant appeal which allege Vanguard began to charge its bargaining unit employees for cell phone overages, which the Union contended, was a unilateral change in the terms and conditions of employment without notice to or bargaining with the Union, as required by the Act. The Union also alleged that Vanguard committed an unfair labor practice by demanding on July 16, 2003, that the Union provide a detailed agenda prior to the August 19, 2003, scheduled meeting and refusing to negotiate after twice receiving agendas.

In addition, the Union's charges included the allegation that Vanguard illegally withdrew recognition of the Union. Approximately two months after refusing to meet, Vanguard formally withdrew its recognition of the Union by letter dated October 15, 2003. In the letter, Vanguard stated that it received a petition signed by a majority of the employees in the bargaining unit which stated that they no longer wished to be represented by the Union. The disaffection petition was signed by eight employees. At the administrative hearing, the parties stipulated that at the time Vanguard withdrew recognition, the bargaining unit included eleven employees. The parties did not agree, however, as to the bargaining unit status of four of the eight employees who signed the petition. The contested employees were Sean Wiggers, Evan Timmerman, Nate Sloan, and Austin Aamodt.

The charges were investigated and a complaint was issued, after which a hearing before ALJ Locke ensued in March of 2004. At the hearing, General Counsel to the Union amended the complaint to add an alternative theory – if the ALJ found that Sean Wiggers, Evan Timmerman, and Nate Sloan were employees in the bargaining unit, then Vanguard improperly granted discretionary wage increases without bargaining with or notice to the Union. The record indicates that ALJ Locke recognized this amended count was pled in the alternative. Subsequent to the amendment at the hearing, Vanguard admitted these allegations and added the defense that these allegations were untimely.

On September 20, 2004, ALJ Locke issued his decision and order which held that Vanguard committed unfair labor practices by: (1) unilaterally implementing changes to the cell phone reimbursement policy without notice or bargaining; (2) refusing to bargain unless the Union first complied with demand for an agenda; (3) withdrawing recognition of the Union without the required majority of bargaining unit employees' signatures; and (4) withdrawing recognition of the Union based on a petition that was tainted by the company's prior unfair practices.

Vanguard filed exceptions to ALJ Locke's decision, which was affirmed in most part by the Board. The Board held that it was unlawful for Vanguard to withdraw recognition without the support of a majority of bargaining unit members, and thus found it unnecessary to decide whether the disaffection petition was tainted by prior unfair practices.

## B. National Labor Relations Act

The Act makes it unlawful for an employer to interfere with the rights of employees to organize. *See* 29 U.S.C. § 158. Specifically at issue in this appeal are Sections 8(a)(1) and (5) of the Act. Section 8(a)(1) of the Act makes it unlawful for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). Section 8(a)(5) of the Act makes it unlawful for an employer to "refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title." 29 U.S.C. § 158(a)(5).

## II.  ANALYSIS

### A.  Summary Enforcement of Uncontested Findings

Vanguard failed to challenge the Board's decision that Vanguard violated Sections 8(a)(1) and (5) of the Act by granting wage increases, higher starting wages, and higher vacation accrual rates to certain employees without first giving notice or an opportunity to bargain to the Union. Vanguard also failed to contest the Board's finding that Vanguard violated Sections 8(a)(1) and (5) of the Act by refusing to provide the Union with requested information about jobs that had been awarded to Vanguard but had yet to commence.  As this Court has previously stated, "[a]n employer's 'failure to address or take issue with the Board's findings and conclusions with regard to . . . violations [of the Act] effectively results in abandonment of the right to object to those determinations.' "  *NLRB v. Talsol Corp.,* 155 F.3d 785, 793 (6th Cir. 1998) (quoting *NLRB v. Kentucky May Coal Co., Inc.*, 89 F.3d 1235, 1241 (6th Cir. 1996)).

In cases in which the employer fails to challenge a portion of the Board's findings on appeal, this Court may "summarily enforce the Board's order with regard to those issues."  *Talsol,* 155 F.3d at 793; *see also NLRB v. Gen. Fabrications Corp.*, 222 F.3d 218, 231-32 (6th Cir. 2000) (stating that the Board's uncontested findings of unfair labor practices are entitled to summary affirmance). When an employer fails to challenge certain adverse findings of the Board, as did Vanguard in this appeal, the employer effectively admits the truth of those findings and loses the right to object to them. *Kentucky May Coal Co., Inc.*, 89 F.3d at 1241.  Accordingly, the Board is entitled to summary enforcement as to the uncontested portions of its Decision and Order.

### B.  Standard of Review

This Court reviews the NLRB's "legal conclusions *de novo* and its factual findings under a substantial evidence standard."  *Harborside Healthcare, Inc. v. NLRB*, 230 F.3d 206, 208 (6th Cir. 2000) (quoting *Ky. River Cmty. Care, Inc. v. NLRB*, 193 F.3d 444, 449 (6th Cir. 1999)).  Factual findings are supported by substantial evidence if a reasonable mind might accept the evidence as "adequate to support a conclusion." *Lee v. NLRB*, 325 F.3d 749, 754 (6th Cir. 2003).  Even if this Court's conclusion as to the substantiality of factual evidence would be different under *de novo* review, it "defer[s] to the Board's reasonable inferences and credibility determinations" as to factual evidence. *Mt. Clemens Gen. Hosp. v. NLRB*, 328 F.3d 837, 844 (6th Cir. 2003).  In reviewing the NLRB's interpretation of the Act, this Court is deferential to the Board's interpretation. *Id.*  So long as the NLRB's interpretation of the statute is "reasonably defensible," this Court will not disturb such interpretation. *Id.*

Given the standard of review, we must decide whether there is substantial evidence to support the Board's findings that Vanguard violated the Act by (1) withdrawing union recognition; (2) insisting that the Union produce an agenda; and (3) enforcing the cellular telephone reimbursement policy.  For the reasons stated below, we find that there is substantial evidence to support each of the Board's findings.

### C.  Withdrawal of Union Recognition Based on Employee Petition

A letter dated October 15, 2003, from Vanguard's attorney, Timothy Ryan, to the Union's attorney, James Tucker, stated that Vanguard was withdrawing its recognition of the Union based on an employee petition signed by a majority of the employees in the bargaining unit.  In order to comply with Section 8(a)(5) of the Act, an employer may only withdraw recognition "where the union has actually lost the support of the majority of the bargaining unit employees."  *Levitz Furniture Co. of the Pacific, Inc.,* 333 NLRB 717, 717 (2001).  This Court noted in *Pleasantview Nursing Home, Inc. v. NLRB,* 351 F.3d 747, 764 (6th Cir. 2003), that lack of majority support may be shown by a petition signed by a majority of members of the bargaining unit.  The issue in this

case is whether the disaffection petition relied on by Vanguard in withdrawing its recognition of the Union indicated that the Union no longer enjoyed the support of a majority of the bargaining unit members.

There was substantial evidence on the record for the Board to conclude that, despite the disaffection petition signed by eight employees[2], the Union continued to enjoy the support of the majority of the bargaining unit members. Vanguard alleged that the bargaining unit consisted of fourteen members and that seven of them signed the disaffection petition, resulting in a loss of majority support for the Union. The Union alleged, and the Board found, that the bargaining unit consisted of eleven members and that only four of them signed the disaffection petition, meaning that the Union continued to enjoy the support of seven out of eleven, a definite majority, of the bargaining unit members. The parties stipulated that eleven employees were members of the bargaining unit. The three employees whose bargaining unit status was uncertain included Nathan Sloan, Evan Timmerman, and Sean Wiggers.

During the course of initial contract negotiations, the Union filed unfair labor charges against Vanguard. On June 5, 2002, the Union and Vanguard entered into an informal settlement agreement which modified the description of bargaining unit work to consist of:

> the installation and repair of fire sprinkler systems without geographic limitation, and restaurant systems of the type performed by Marty Shields, but shall not include the installation and repair of any other chemical or gas special hazard systems, and shall not include the visual inspection and related testing of any systems.

The Board found that because Sloan, Timmerman, and Wiggers were not performing bargaining unit work when they signed the petition, their signatures on the petition were not to be counted.

Nathan Sloan testified that he began working for Vanguard in June 2002 as a shop employee and remained in that position until he was laid off for one day on August 1, 2003. Maintenance shop work was not included in the description of bargaining unit work. When Sloan returned to work he was told he would be a sprinkler fitter, a position within the bargaining unit, however, the Board found that he spent much of August continuing to work in the shop. During portions of the final week of August and the first week of September, Sloan's work included sprinkler installation, however, the remainder of September was again spent working in the shop. Sloan testified that he also spent the month of October working in the shop and the record does not support a contrary finding. Relying on *Arlington Masonry Supply*, 339 NLRB 817, n3 (2003) (holding that one must, for a sufficient amount of time, "regularly perform duties similar to those performed by unit employees" in order to be considered a member of the bargaining unit), the Board found that, based upon the small amount of time he spent performing bargaining unit work, Nathan Sloan was not a member of the bargaining unit. While there was evidence that a small portion of Sloan's time was dedicated to bargaining unit work, this Court has held that it will not overturn factual findings of the Board simply because the evidence could have been viewed differently. *Talsol Corp.,* 155 F.3d at 793.

Evan Timmerman began working for Vanguard in March 2003, and was assigned to the "special hazards" systems, which is not included in the bargaining unit. While there was some evidence that Timmerman spent a portion of his time installing sprinkler systems, the evidence on the record indicated that the percentage of Timmerman's work time spent performing such bargaining unit work was not high. The Board had substantial evidence to conclude that

---

[2] Vanguard initially contended that employee Austin Aamodt, who signed the petition, was a bargaining unit employee, however it later conceded that he was not, changing its contention to state that seven of fourteen unit members signed the petition.

Timmerman did not spend enough time prior to or during October 2003 (the time the disaffection petition was presented) regularly performing duties that would have entitled him to inclusion in the bargaining unit. As Timmerman was not a bargaining unit employee in October 2003, his signature on the petition is of no consequence.

Sean Wiggers began working for Vanguard in late June 2002 as a sprinkler system installer, but in December 2002 or January 2003, Wiggers was assigned to the "special hazards" systems which is not a part of the bargaining unit. Wiggers has worked in the special hazards unit since the time of his reassignment, thus, he was not a bargaining unit employee in October 2003 and his signature on the petition is also inconsequential.

The record provided the Board with substantial evidence to conclude that Sloan, Timmerman, and Wiggers were not bargaining unit employees when they signed the petition. That determination meant that there were only eleven bargaining unit members at the time the petition was signed. Because Aamodt, Sloan, Timmerman and Wiggers were not in the bargaining unit, only four of the eight signatures on the petition represented bargaining unit members. The Union continued to be supported by seven of the eleven bargaining unit members, therefore, Vanguard's withdrawal of Union recognition violated Section 8(a)(5) of the Act. *Levitz*, 333 NLRB at 717 (an employer may only withdraw union recognition when the union actually loses the support of the majority of bargaining unit members).

Interestingly, Vanguard does not seem to challenge the Board's findings that Sloan, Timmerman and Wiggers were not members of the bargaining unit. Vanguard instead makes a futile attempt to characterize a portion of the Union's alternatively pled complaint as an admission by the Union that Sloan, Timmerman and Wiggers were members of the bargaining unit. The Union's complaint initially alleged that Vanguard violated the Act by withdrawing Union recognition while the Union maintained the support of the majority of the bargaining unit members. In order to find this allegation true, ALJ Locke would have needed to find that Sloan, Timmerman, and Wiggers were not members of the bargaining unit. The Union amended the complaint to allege, in the alternative, that *if* Sloan, Timmerman, and Wiggers were found to be members of the bargaining unit, then Vanguard violated the Act by unilaterally increasing their wages without negotiating with the Union. Vanguard attempts to argue that the Union's alternatively pled complaint became an admission or stipulation that the three men were in the bargaining unit once Vanguard admitted such fact. Vanguard's argument is without merit.

ALJ Locke concluded that Sloan, Timmerman, and Wiggers were not in the bargaining unit, therefore, he never reached the allegations in the Union's alternatively pled complaint. Vanguard would have this Court believe that once a party makes an argument in the alternative and the opposing party accepts part of the alternative argument as true, that the facts and conclusions of the alternative argument are conclusively established. What Vanguard failed to consider is that both the Board and this Court have permitted alternative arguments without deeming the allegations in such arguments to be true because they were pled and not objected to by the opposing party. *See S. Freedman Elec. Inc.,* 256 NLRB 432, 432 (1981) (counsel alleged that employer's withdrawal from bargaining unit was unlawful, or in the alternative, that if the withdrawal was lawful, the bargaining unit was employer's single facility); *see also W. Paper Prods., Inc.*, 313 NLRB 94,94 (1993), *enf'd in relevant part sub nom, Peters v. NLRB,* 153 F.3d 289 (6th Cir. 1988)(noting that as a general rule, pleading in the alternative is permitted).

Vanguard cannot be allowed to turn the Union's alternative argument, especially considering that the Board did not even reach its merits, into an admission or stipulation by the Union for Vanguard's own benefit. Vanguard likens the allegations in the Union's alternatively pled complaint to a stipulation which must be accepted by the Court, however, Vanguard fails to offer any relevant authority. There was no stipulation offered or entered into by the parties. In the case

Vanguard uses to support its stipulation argument, *Academy of Art College*, 241 NLRB 454, 454-55 (1979), the employer actually entered into a written stipulation and later tried to deny the facts in the stipulation. In the instant case, there was no stipulation entered into by the Union. Moreover, both ALJ Locke and the Board found substantial evidence to believe that Sloan, Timmerman, and Wiggers were not bargaining unit employees when they signed the petition. Contrary to Vanguard's argument, the Board is not required to accept stipulations where they are contrary to the evidence. *See First Healthcare Corp.*, 336 NLRB 646, 646 (2001) (rejecting stipulation limiting litigation to a single issue), *enf'd* 344 F.3d 523 (6th Cir. 2003); *Red Lion*, 301 NLRB 33, 33-34 (1991)(rejecting stipulation not supported by the facts).

Finally, Vanguard's argument that the Court should review this issue *de novo* because the Board failed to follow Board Rule 102.20 is without merit. Board Rule 102.20 states:

> All allegations in the complaint, if no answer is filed, or any allegation in the complaint not specifically denied or explained in the answer filed, unless the respondent shall state in the answer that he is without knowledge, shall be deemed to be admitted to be true and shall be so found by the Board, unless good cause to the contrary is shown.

This rule explicitly applies to situations where no answer is filed by the respondent. In this case, Vanguard filed an answer to the complaint, and even if it had not, the facts presupposed by the Union's alternatively pled complaint would still not be established as true because the merits of the alternatively pled complaint were never even reached once the Board decided the three employees in question were not members of the bargaining unit.

The Board's findings that Sloan, Timmerman and Wiggers were not members of the bargaining unit were supported by substantial evidence on the record. The allegations in the Union's alternative complaint were not admitted or stipulated to. Finally, the Board did not violate any of its own rules in deciding that Vanguard's withdrawal of Union recognition was not based on an actual loss of majority support for the Union.

### D.  Requiring Union to Provide Agenda

Section 8(a)(5) of the Act requires parties to meet and bargain in good faith as to mandatory subjects of bargaining such as wages, hours, and other terms and conditions of employment. *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 210 (1964). Parties are not required to bargain over non-mandatory subjects, however, one cannot insist upon a non-mandatory subject of bargaining to impasse or as a precondition to bargaining on mandatory subjects. *NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 349 (1958); *Taylor Warehouse Corp. v. NLRB*, 98 F.3d 892, 901(6th Cir. 1996). A party who insists upon a non-mandatory subject to impasse or as a precondition to bargaining violates Sections 8(a)(1) and (5) of the Act. *Id.* A meeting agenda is not a mandatory subject of bargaining; therefore, Vanguard's insistence upon an agenda's being submitted by the Union fourteen days prior to proposed meetings between the parties resulted in Vanguard's violation of the Act. *See Caribe Staple Co.*, 313 NLRB 877, 890 (1994) (concluding that an employer's "attempt to force capitulation by declining to agree to any future bargaining session unless the Union acceded to this nonsubstantive, procedural demand" of providing an agenda before meetings violated Sections 8(a)(5) and (1) of the Act).

There is substantial evidence on the record to support the Board's finding that Vanguard insisted upon the Union's submitting a detailed agenda as a precondition to bargaining on mandatory subjects, in violation of Sections 8(a)(1) and (5). In a July 16, 2003, letter to the Union's attorney, James E. Tucker, Vanguard's attorney, Timothy J. Ryan, stated that Vanguard was willing to "make one more attempt to meet." Vanguard expressly conditioned the meeting between the

parties upon its receipt of a "detailed agenda" "at least two weeks in advance" of the meeting.  The specific points Vanguard wished the Union to address in its agenda included details of the proposals that needed to be "worked out," specific proposals the Union intended to make, and any other issues the Union would like to discuss.

In its August 4, 2003, letter replying to Vanguard's request for a detailed agenda, the Union included an agenda which specifically addressed "areas which need to be "worked out," the Union's "specific proposals," and "discussion issues."  The agenda submitted by the Union clearly satisfied Vanguard's request for a detailed agenda, yet in an August 12, 2003, letter from Ryan to Tucker, Vanguard rejected the Union's agenda and cancelled the August 19, 2003, meeting of the parties claiming the Union's agenda did not satisfy Vanguard's request.

Again on August 28, 2003, the Union attempted to provide Vanguard with an acceptable agenda.  The letter from Tucker to Ryan included a detailed three-page agenda which again outlined the very topics Vanguard requested be included in the agenda.  Vanguard evidenced its refusal to accept the second agenda by failing to respond to the letter containing the agenda and by never again meeting with the Union.

Although Vanguard argues its insistence upon receiving an agenda from the Union fourteen days before proposed meetings was simply an example of the type of "hard bargaining" that was met with approval in *National Medical Associates*, *Inc.*, 318 NLRB 1020, 1031 (1995), that case is distinguishable from the instant case.  Vanguard's refusal to accept two seemingly compliant agendas indicates its bad faith and its attempt to illegally require a nonmandatory agenda as a precondition to bargaining.

In *National Medical Associates, Inc.,* the Board found that a letter sent by the employer to the union stating that there would be no further negotiations until the employer received "some meaningful indication of a willingness to compromise" on disputed issues did not constitute an illegal precondition to bargaining.  *Id.* at 1025.  The Board's finding was heavily influenced by the fact that the letter from the employer expressly stated that it *was not* refusing to meet with union.  *Id.* at 1030.  The instant case is distinguishable from *National Medical Associates, Inc.*, as Vanguard expressly stated that it *was* refusing to bargain with the Union unless it received a detailed agenda fourteen days before proposed meetings. ("[I]f we have not received a detailed agenda . . . on or before August 5, 2003, we will cancel the August 19, 2003, meeting and we will not schedule another meeting until we have received these items.")  Even after receiving multiple agendas, Vanguard refused to meet with the Union.  Vanguard was not using the agenda to merely put pressure on the Union, it was using the agenda to create an illegal precondition to bargaining.

The facts described above demonstrate the substantial evidence that exists on the record to support the Board's finding that Vanguard simply used the agenda, a nonmandatory subject of bargaining which cannot be insisted upon as a precondition to bargaining, as a conduit for its refusal to bargain on mandatory subjects, thereby violating Sections 8(a)(1) and (5) of the Act.

Vanguard's argument that its insistence upon the nonmandatory agenda to the preclusion of bargaining on mandatory subjects was permitted because the Union failed to object to the request is misplaced.  A waiver of one's collective bargaining rights, including the right to be free from illegal preconditions to bargaining such as the agenda at issue here, must be shown by "clear and unmistakable" evidence. *Taylor Warehouse,* 98 F.3d at 902 (6th Cir. 1996).  Vanguard proposes that the Union's act of submitting an agenda resulted in a waiver of the Union's collective bargaining rights, thereby precluding Vanguard from violating the Act with respect to the agenda.  This argument is not supported by the facts or the law.

The Union did object to Vanguard's demand that it submit an agenda before meetings between the parties were to proceed. In a letter to Vanguard's attorney, the Union clearly stated that the agenda requirement was contrary to the past bargaining practices of the parties. Had Vanguard revealed that it would reject acceptable agendas, the Union may have been more adamant in its objection to the agenda requirement. The Union's submission of an agenda can be described as nothing more than an attempt to encourage bargaining between the parties - far from the waiver of its collective bargaining rights Vanguard proposes.

There is substantial evidence on the record to support the Board's finding that Vanguard insisted upon a nonmandatory agenda as a precondition to bargaining on mandatory subjects, thereby violating the Union's collective bargaining rights. There is no clear and unmistakable evidence to support Vanguard's argument that the Union waived its collective bargaining rights thereby precluding Vanguard from violating the Act with respect to its agenda requirement.

### E.  Enforcement of Dormant Cell Phone Reimbursement Policy

An employer violates its bargaining obligations under Section 8(a)(1) and (5) of the Act if it changes a term or condition of employment without bargaining with the employees' bargaining representative. *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198 (1991) (citing *NLRB v. Katz*, 369 U.S. 736, 743 (1962)); *NLRB v. Plainville Ready Mix Concrete Co.*, 44 F.3d 1320, 1325-26 (6th Cir. 1995). Employer-sponsored cellular telephone plans are a condition of employment and must be bargained over. *Goya Foods of Florida,* No. 12-CA-19668, 2001 WL 1603837 (NLRB Feb. 22, 2001). Vanguard argues that because its policy of charging employees for cell phone overage existed prior to the Union's recognition, it did not unilaterally, and in violation of the Act, change a condition of employment. This Court previously held that "Sections 8(a)(1) and (5) of the Act can be violated when, on the heels of a successful union election, an employer begins to strictly enforce previously existing rules which had not earlier been enforced." *Hyatt Corp. v. NLRB*, 939 F.2d 361, 372-73 (6th Cir. 1991). There was substantial evidence on the record for the Board to conclude that Vanguard began to strictly enforce its once lax policy of charging employees for overage only after the employees gained Union representation.

The Union election occurred in July 2001. Vanguard states that on at least three occasions prior to the Union election, it distributed memorandums to employees informing them of the policy to charge employees for cell phone overage. The Board found that despite the policy and the frequent occurrence of overage, on only one occasion prior to the Union election was an employee charged for cell phone overage. The Board concluded that the lack of documentation that Vanguard charged employees for overage prior to the Union election indicates that such charges did not occur. Additionally, several Vanguard employees testified that they accrued overage but were never charged until after Union election. Vanguard began to enforce its overage policy in December of 2002, after the Union election.

Despite Vanguard's argument that a spreadsheet it submitted to ALJ Locke evidences its overage charges to sixteen employees prior to Union election, the ALJ expressly discredited the spreadsheet by stating: "I have little confidence in the accuracy of this list and do not credit it."

The ALJ's credibility determination was based on the facts that the list was generated by Vanguard specifically for the hearing before the ALJ and that the circumstances surrounding the creation of the list were also troubling. The list was compiled from Post-It notes given to Vanguard's accountant, Tim Callahan, by office manager Vandi Young who drafted the Post-It notes from a verbal communication with Sharon Bishop, the administrative assistant responsible for administering the cell phone policy. ALJ Locke's determination that the spreadsheet was not credible evidence, subsequently adopted by the NLRB, was, and is, entitled to great weight. *See Taylor Warehouse , 98 F.3d at 901(holding that "credibility determinations made by ... administrative law judge[s] and

adopted by the [National Labor Relations Board] (NLRB) are entitled to great weight"). Absent the discredited spreadsheet, there is no evidence that Vanguard enforced its overage policy until after the Union election. By beginning to strictly enforce its lax policy of charging employees for overage only after Union election, Vanguard unilaterally changed a condition of employment without negotiating with the Union.

## III.  CONCLUSION

For the foregoing reasons, we hereby **AFFIRM** and **ENFORCE** the Order of the Board.