*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0057p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

NATIONAL LABOR RELATIONS BOARD,
　　　　　　*Petitioner/Cross-Respondent,*

　　　*v.*

INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL 429 (07-1279), and its Agent,
NASHVILLE ELECTRICAL JOINT APPRENTICESHIP
TRAINING COMMITTEE (07-1107),
　　　　　　*Respondents (07-1005/1107/1279)*
　　　　　　　　　　*/Cross-Petitioners.*

> Nos. 07-1005/1107/1279

On Application for Enforcement and Cross-Petition
for Review of an Order of the National Labor Relations Board.
No. 26-CB-4240.

Argued: December 7, 2007

Decided and Filed: January 31, 2008

Before: MERRITT, COLE, and GRIFFIN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Daniel A. Blitz, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner. R. Jan Jennings, BRANSTETTER, STRANCH & JENNINGS, Nashville, Tennessee, Sue D. Gunter, SHERMAN, DUNN, COHEN, LEIFER & YELLIG, Washington, D.C., for Respondent. Gary L. Lieber, SAUL EWING, Washington, D.C., for Amicus Curiae. Sally M. Tedrow, O'DONOGHUE & O'DONOGHUE, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Daniel A. Blitz, Linda Dreeben, Julie B. Broido, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Petitioner. R. Jan Jennings, BRANSTETTER, STRANCH & JENNINGS, Nashville, Tennessee, Sue D. Gunter, Martin J. Crane, SHERMAN, DUNN, COHEN, LEIFER & YELLIG, Washington, D.C., for Respondent. Sally M. Tedrow, O'DONOGHUE & O'DONOGHUE, Washington, D.C., Gary L. Lieber, SAUL EWING, Washington, D.C., for Amici Curiae.

　　　GRIFFIN, J., delivered the opinion of the court, in which COLE, J., joined. MERRITT, J. (p. 6), delivered a separate concurring opinion.

---

**OPINION**

---

GRIFFIN, Circuit Judge. This matter is before us on the NLRB's petition to enforce its order holding that the International Brotherhood of Electrical Workers, Local 429 ("IBEW" or "Union"), and an apprenticeship committee, retaliated against an apprentice for being delinquent in paying his union dues and for expressing anti-union views. The Union and apprenticeship committee cross-appealed, seeking review of the NLRB's order. For the reasons stated below, we remand to the NLRB for further consideration and articulation of its conclusion that the apprenticeship committee acted as an agent of the Union.

I.

The Nashville Electrical Joint Apprenticeship Training Committee ("JATC" or "Committee") is comprised of four representatives each from the Union and the Middle Tennessee Chapter of the National Electrical Contractors Association ("Association"), an organization representing a number of local employers. The JATC is responsible for overseeing the training and hiring of apprentice electricians and a "local apprenticeship and training trust fund" to which all participating employers contribute.

JATC apprentices must complete 200 hours of classroom training and 8,000 hours of supervised on-the-job training. The JATC has the authority to rotate apprentices through different employers, but the record reveals that "the JATC did not rotate apprentices on a regular basis in part because this practice was opposed by apprentices and employers as disruptive to ongoing projects."

Tennessee is a "right-to-work" state, meaning that employees cannot be forced to join a union as a condition of employment. TENN. CODE ANN. § 50-1-201. Likewise, apprentices are not required to join a union or pay union dues in order to participate in the JATC.

Daniel Page, an apprentice electrician in the JATC program and Union member, was terminated from the JATC program in 1997 after being discharged by two different participating employers for absenteeism. In 2000 or 2001,[1] Training Coordinator Elbert Carter told Page to consider seeking readmission to work for Elec Tech, a company owned by Page's father that had a collective-bargaining agreement with the Union requiring it to only hire apprentices from the JATC program. Page was readmitted into the JATC and began working for Elec Tech.

At some point after being readmitted to the JATC, Page became delinquent in his Union dues. Carter called Page into his office in either April or May 2001 to ask about the delinquency. This conversation took place in the presence of Union Representative Gerald Grant and Union Business Manager Jerry Lee – both of whom were Union-appointed members of the JATC. Carter would regularly receive information from the Union regarding apprentices who were not current with their Union dues. During this conversation, Carter warned Page that he would lose the benefits of Union membership if he did not pay his dues. Page paid his dues through November with the help of his father.

By July 2002, Page had fallen six months behind with his Union dues. Union Representative Mike Bearden spoke to Page's father about the matter. Two days later, on July 10, 2002, the JATC

---

[1]The NLRB opinion notes that there is some confusion in the record regarding whether this happened in 2000 or 2001, but noted that it found it "unnecessary to resolve this conflicting testimony, however, as the timing of Page's readmission has no bearing on the outcome of the case."

held a special meeting during which Carter recommended that Page be transferred to a different employer to "ensure that he could work successfully in environments other than his father's shop." The JATC agreed to Carter's proposal. Carter sent letters to Page and Elec Tech the next day informing them that Page would be rotated to a different employer. On the same day, Page spoke with Union Representative and JATC Member John Hooper and informed him that he would no longer be a member of the Union.

Page's father sent a letter to Carter requesting a postponement of the rotation. Carter refused, but stated that Page and his father could discuss the matter with the JATC at its next meeting on July 24, 2002. Page's father discussed the matter at the next JATC meeting, and the JATC voted unanimously to rescind the rotation. Page informed the JATC that he had spoken with NLRB representative Stacey Smith and Nat Brown, the State Director of the United States Department of Labor, Bureau of Apprenticeship and Training, and they told him that he did not have to answer any questions from the JATC. Following the meeting, Carter contacted Smith and Brown, both of whom denied making the statements to Page. Page answered the committee's questions at a meeting the following day.

At a meeting on September 4, 2002, the JATC voted to discipline Page for failing to cooperate with the JATC and for being dishonest. Page's punishment was a six-month delay in his promotion to journeyman electrician and the accompanying pay raise. This punishment is in contrast to one handed down shortly thereafter to Robert Collier, another apprentice, for lying. Collier was merely issued a stern warning.

Page filed an unfair labor practices complaint with the NLRB. After reviewing the charge, the NLRB's General Counsel prepared a complaint on his behalf. The case was first heard by an ALJ who found that the JATC was not an agent of the Union and that its actions did not rise to the level of violating the National Labor Relations Act (the "Act"), 29 U.S.C. § 151, et seq. On appeal, the NLRB reversed, holding that the JATC was an agent of the Union and that it violated §§ 8(b)(1)(A) and (2) of the Act by attempting to rotate Page to a different employer and by delaying his pay raise by six months.

The NLRB petitioned us to enforce its order, and the Union and JATC cross-petitioned for review of the order.

## II.

The threshold question is whether the JATC is an agent of the Union. We cannot enforce the NLRB's order finding the Union and the JATC liable for violating the Act unless we agree with the NLRB's conclusion that the JATC is an agent of the Union. If the JATC is not an agent of the Union, then the JATC is not subject to the Act, the NLRB lacks jurisdiction over the JATC, and the Union cannot be held liable for the JATC's actions. Unfortunately, the NLRB spends the vast majority of its brief discussing the alleged violations of the Act, rather than addressing the preliminary issue of agency. Conversely, the Union and the JATC only cursorily address the alleged violations and instead concentrate upon their argument that the JATC is not an agent of the Union.

The NLRB determined that the JATC and the Union violated §§ 8(b)(1)(A) and (2) of the Act, 29 U.S.C §§ 158(b)(1)(A) and (2), by attempting to rotate Page to a new employer and delaying his scheduled pay raise by six months in retaliation for his anti-union views and refusal to pay Union dues.

When reviewing claims of union discrimination against an employee in violation of §§ 8(b)(1)(A) and (2) of the Act, the NLRB applies the burden-shifting analysis described in *Wright Line*, 251 NLRB 1083 (1980), *enf'd* 662 F.2d 889 (1st Cir. 1981), *adopted in NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 399-403 (1983). Under the *Wright Line* analysis, the NLRB's General

Counsel has the initial burden of making a prima facie showing "sufficient to support the inference that protected conduct was a 'motivating factor' in the employer's decision." *Wright Line*, 251 NLRB at 1089. Once the General Counsel has made this showing, "the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct." *Id.* However, if "the reasons advanced by the employer were pretextual, that determination constitutes a finding that the reasons advanced by the employer either did not exist or were not in fact relied upon" and this prevents the employer from rebutting the finding of unlawful motive. *Limestone Apparel Corp.*, 255 NLRB 722, 722 (1981), *enf'd* 705 F.2d 799 (6th Cir. 1982).

On appeal, we must uphold the NLRB's factual determinations so long as they are supported by substantial evidence. 29 U.S.C. § 160(e) ("The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Vanguard Fire & Supply Co., Inc. v. NLRB*, 468 F.3d 952, 957 (6th Cir. 2006). "Factual findings are supported by substantial evidence if a reasonable mind might accept the evidence as 'adequate to support a conclusion.'" *Vanguard Fire & Supply Co.*, 468 F.3d at 957 (quoting *Lee v. NLRB*, 325 F.3d 749, 754 (6th Cir. 2003)). For purposes of the *Wright Line* analysis, the determination of an employer's motive is a factual question. *NLRB v. A&T Mfg. Co.*, 738 F.2d 148, 149 (6th Cir. 1984). While we must uphold the Board's factual determinations if they are supported by substantial evidence, we review the Board's legal conclusions de novo. *Vanguard Fire & Supply Co.*, 468 F.3d at 956-57. However, "[s]o long as the NLRB's interpretation of the statute is 'reasonably defensible,' this Court will not disturb such interpretation." *Id.* at 957 (quoting *Mt. Clemens Gen. Hosp. v. NLRB*, 328 F.3d 837, 844 (6th Cir. 2003)).

The NLRB found "that direct and circumstantial evidence establishes that the Committee's attempt to require Elec Tech to rotate Page was unlawfully motivated and that the Committee has not shown that it would have done so absent Page's dues delinquency and antiunionism." The Board cited a number of facts to support its conclusion. It noted Committee Member Noll's admission that "the rotation decision was 'about dues and other agreements and understandings [Page] has broken.'" Gerald Grant, the Union Business Agent and Committee Member, knew of Page's dues delinquency before the JATC met and voted to rotate him to a different job assignment. Based on testimony from Union Business Manager and Committee Member Jerry Lee, the Board concluded that "Page's hostility to the Union was generally known . . . ." Based on testimony in the record, the Board found that the "timing strongly suggests that Page's dues delinquency motivated the attempted rotation."

III.

Despite its finding that the Union and JATC violated the Act,[2] the NLRB's decision cannot stand unless it has shown that the JATC acted as an agent of the Union. The NLRB based its decision on its prior ruling in *Iron Workers Local 15*, 298 NLRB 445, 462-63, *enforcement denied* 929 F.2d 910 (2nd Cir. 1991), and ruled that the JATC was engaged in collective-bargaining functions by creating a pool of electrical workers available for hire by employers affiliated with the JATC. The NLRB concluded that the JATC "acts as an agent of the Union, and within the scope of its authority as defined by the parties' collective-bargaining agreement, in administering the joint apprenticeship program."

The Union and the JATC appeal this ruling. They argue that the NLRB reversed the ALJ's factual findings and held that the JATC was an agent of the Union without applying any principles

---

[2]In view of our disposition, it is unnecessary for us to rule on the correctness of this finding.

of well-established agency law.  They argue further that the JATC could not have been an agent because it was acting as an ERISA fiduciary, and that the NLRB's decision was inconsistent with judicial and NLRB precedent.

The NLRB did not discuss or apply principles of agency law in its decision.  It is unclear to us how a Committee composed of an equal number of union and employer representatives could be any more an agent of the Union than of the employers.  It is not clear whether the NLRB determined that the collective-bargaining agreement somehow transformed the JATC into a general agent of the Union, or if some other agency principle applied.

Unless there is no genuine issue of material fact, the presence, or absence, of agency requires a factual analysis.  *See NLRB v. Local No. 64, Falls Cities Council of Carpenters*, 497 F.2d 1335, 1336 (6th Cir. 1974) (observing that "a question of agency must be factually determined 'under common law agency principles.'" (quoting *Ace Doran Hauling & Rigging Co. v. NLRB*, 462 F.2d 190, 193 (6th Cir. 1972))). However, based on this record, we are unable to discern the factual and legal basis for the Board's determination of agency.  For this reason, we remand and hold that the NLRB must articulate and apply recognized principles of agency law before it may assert jurisdiction over an entity that it concludes acts as an agent of the union or employer.

Remanded for further proceedings consistent with this opinion.

---

**CONCURRENCE**

---

MERRITT, Circuit Judge, concurring. I concur in Judge Griffin's opinion in Section III and the dispositive final order remanding the case to the NLRB for clarification. I do not find the other sections of the opinion to be necessary to the disposition of the case. But I would like to know from the NLRB whether its ruling is based upon a conclusion that the joint committee is an agent of both the Union and the Electrical Contractor's Association. I agree with Judge Griffin's view that the NLRB should clarify its agency ruling and explain the nature of the agency relationship that provides the NLRB with jurisdiction.